IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEANNETTE B.,[1]                                                    Case No. 3:22-cv-01331-JR

       Plaintiff,                                              OPINION AND ORDER

       v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

RUSSO, Magistrate Judge:

       Plaintiff Jeannette B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND[2]

Born in September 1967, plaintiff alleges disability beginning January 12, 2016, due to orbitopathy with restrictive strabismus post decompression, chronic bilateral diplopia, exophthalmos, myopathy of extraocular muscles, eyelid retraction, and Graves disease. Tr. 204. Her application was denied initially and upon reconsideration. Tr. 103, 109. On October 25, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 41. On December 17, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 35. On November 5, 2019, the Appeals Council declined review of the ALJ's decision. Tr. 1. On January 9, 2020, plaintiff then filed a complaint in this Court. Tr. 656-57.

On March 29, 2021, District Judge Simon reversed the ALJ's decision and remanded the case for further proceedings. Tr. 663. In particular, Judge Simon found that the ALJ erred in regard to the sole issue raised by plaintiff—i.e., the weight afforded to the opinion of Daniel Holland, M.D. Tr. 676.

On October 6, 2021, a second ALJ hearing was held. Tr. 620. On December 27, 2021, the ALJ issued a second decision finding plaintiff not disabled. Tr. 598. After the Appeals Council denied her request for review, plaintiff again filed a complaint in this Court. Tr. 588; Compl. 1-3 (doc. 1).

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 604. At step two, the ALJ

---

[2] The record before the Court constitutes nearly 1200 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

determined the following impairments were medically determinable and severe: "bilateral thyroid-related immune orbitopathy with restrictive strabismus status post decompression surgery and blepharoplasty; diplopia; and headaches." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform medium exertion work as defined by 20 C.F.R. § 404.1567(c) except:

> she can never climb ropes, ladders, or scaffolds; she can do occasional overhead work bilaterally; she can occasionally use depth perception and visual accommodation; she can use frequent near and far visual acuity; she can use frequent color discernment and visual field; and she should avoid even moderate exposure to hazards.

Tr. 605.

At step four, the ALJ determined plaintiff was capable of performing her past relevant work as a Storage Facility Rental Clerk. Tr. 610. Alternatively, at step five, the ALJ concluded there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as General Retail Sales Clerk, Sales Attendant, Ticket Seller, and Recreation Aide. Tr. 611-12.

## DISCUSSION

Plaintiff argues the ALJ erred by failing to: (1) include any limitations in the RFC reflecting her "need to be off-task or absent from work due to her frequent severe headaches"; and (2)

"provide specific, germane reasons to reject the opinions from Ian Penner, PA-C." Pl.'s Opening Br. 1 (doc. 16). [3]

## I.    ALJ's Consideration of Plaintiff's Headaches

Plaintiff contends "[t]he ALJ erred by failing to make any findings as to the frequency of [her] headaches and by failing to account for the limitations caused by these headaches." *Id.* at 10. In support of this argument, plaintiff relies on Social Security Ruling ("SSR") 19-4p, which states in relevant part: "Chronic tension-type headaches and frequent episodic tension-type headaches may be disabling depending on the frequency of the headache attacks, type of accompanying symptoms, response to treatment, and functional limitations." *Id.* at 11.

As an initial matter, plaintiff does not identify any precedent requiring a precise quantification of headache frequency and the plain language of SSR 19-4p does not appear to contemplate as much. *See Paula J. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 4146155, *6 (D. Or. June 23, 2023)* (denoting that, under SSR 19-4p, "adjudicators are instructed to focus on whether the impairment-related symptoms are consistent with the evidence in the record"). Moreover, as plaintiff acknowledges, "the ALJ cited to evidence regarding [her] headaches [at step two and] when discussing her testimony and the medical opinion evidence." Pl.'s Opening Br. 11 (doc. 16). And beyond that from Mr. Penner (which is discussed in Section II), plaintiff does not cite to any medical or other evidence except her own statements to establish limitations associated with her

_____

[3] Although not dispositive, the Court notes that plaintiff failed to raise either issue in her previous appeal. Tr. 669; *see also Munoz v. Cnty. of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982) (courts "need not and do not consider a new contention that could have been but was not raised on the prior appeal"); *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) ("[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost").

headaches. Accordingly, the Court construes plaintiff as challenging the ALJ's treatment of her subjective symptom testimony.

When a claimant has medically determinable impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the first hearing in October 2018, plaintiff testified she has double vision "constantly" and "get(s) major headaches from it." Tr. 52. She reported she gets a headache severe enough to interfere with her activities three to six times per week. Tr. 60. She denied ever having fewer than three headaches per week. *Id.* Plaintiff reported the headaches each last from fifteen minutes to three hours. Tr. 61. During three-hour episodes, plaintiff "put(s) a pillow over my head and I make sure it's quiet and dark." *Id.*

At the second hearing in October 2021, plaintiff articulated she is unable to work due to "a lot of eye sores . . .  it feels like I'm having contractions in [my] eyes." Tr. 627, 629. She noted she "probably get(s) them like four times/five times a week," and that she sleeps and rests "quite a bit" because she "never know(s) when these eye storms are going to hit." Tr. 629. She denied having any regular daily activities beyond completing basic tasks to care for her disabled husband. Tr. 627-28.

The ALJ relied on the same reasons for rejecting plaintiff's testimony at the first and second hearings. That is, after summarizing plaintiff's hearing testimony, the ALJ determined plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 606. In particular, the ALJ cited to medical evidence demonstrating that, amongst other things: topiramate helped reduce the frequency of plaintiff's headaches; she did not have headaches at the time of her appointments; and her double vision and headache severity improved. Tr. 606-08. In addition, the ALJ cited to plaintiff's activities of daily living. Tr. 607.

Concerning the latter, the ALJ noted plaintiff's activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." *Id.* "Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds).

Substantial evidence supports the ALJ's decision as to this issue. During the adjudication period, plaintiff cared for her dog, performed light housework and yardwork, prepared meals, drove a car or four-wheeler, shopped for groceries, handled her finances, watched television daily, and went fishing and "artifacting" monthly. Tr. 50, 54-56, 60, 216-19, 242-44, 554, 626, 829-30, 832-34. As the ALJ reasonably determined, plaintiff's ability to watch television approximately three hours per day was "inconsistent with the severity of symptoms alleged." Tr. 60, 607. Finally, the record demonstrates that, early in 2021, plaintiff became the "24/7" caregiver for her husband, which required her to lift him and assist him with his daily activities and take him to appointments. Tr. 829-30, 833, 1091; *see Febach v. Colvin*, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004)).

An independent review of the medical record also supports the ALJ's conclusion that plaintiff's headaches were not as frequent or severe as alleged. Shortly after the alleged onset date, plaintiff presented with a "really bad left sided headache" ongoing since the prior night. Tr. 329. On September 27, 2016, plaintiff reported eye strain headaches that are "worse in the mornings." Tr. 436. On November 11, 2016, Mr. Penner noted plaintiff's ongoing headaches due to double

vision happen up to every three days, though plaintiff can go a maximum of "about (seven) days without one." Tr. 453.

On January 20, 2017, plaintiff reported her headaches were "less frequent, down from maybe ten per month to five per month." Tr. 452. During an April 4, 2017, visit, Mr. Penner noted "[t]opiramate helps some but she often forgets to take the nighttime dose." Tr. 575. On March 16, 2018, plaintiff indicated during an eye exam that she has a "[d]ull ache occasionally when eyes feel strained" but her headaches were "not as 'strong or as often as before.'" Tr. 1065. On May 25, 2018, plaintiff again reported her headaches were "less severe" and the "topiramate helped" but she "went off [it] for a while" because it made her "feel tired." Tr. 572. At that time, she reported smoking five cigarettes per day, and marijuana twice per day. *Id.* On August 1, 2018, plaintiff sought treatment for "ongoing migraine issues," situational depression, and hot flashes. Tr. 894. On September 26, 2018, Mr. Penner denoted an increase to plaintiff's topiramate. Tr. 893. Over the next year, plaintiff sought treatment on only one occasion for her recurrent headaches, but she was evaluated in relation to her eye problems. Tr. 884, 888. Plaintiff eventually had two eye procedures towards the end of 2019. Tr. 866-68, 878-80, 1080-82.

During a February 10, 2020, visit plaintiff reported her double vision and headaches were "much improved" since her September 2019 strabismus surgery, to the point she was able to resume driving. Tr. 869. During a May 28, 2021, visit for a blood draw related to treatment of her right shoulder pain, plaintiff noted for the past three to four months she had about four to five twenty-four-hour episodes of pressure and pain behind her left eye. Tr. 1110. She noted ibuprofen caused a "slight improvement" in these symptoms. *Id.*

In sum, the ALJ provided at least one clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony concerning the extent of her headaches. The ALJ's decision is affirmed on this issue.

## II.    Mr. Penner's Opinion

Plaintiff next asserts the ALJ erred by not providing specific, germane reasons to reject the opinion of Mr. Penner.[4] For initial applications filed before March 27, 2017, "[i]f an ALJ disregards testimony of a lay witness [or lay medical source], the ALJ must provide reasons 'that are germane to each witness.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Further, the reasons provided "must be specific." *Id.* (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

Mr. Penner became plaintiff's primary care provider in 2014. Tr. 453, 458, 799. Mr. Penner saw plaintiff approximately 15 times during the adjudication period, for a variety of ailments, including headaches, as well as medication management. Tr. 452-53, 455-56, 572, 575, 869-72, 883-85, 892-94, 1164-66. In October 2018 Mr. Penner opined, in a letter requested by plaintiff immediately prior to her first hearing, that plaintiff has severe thyroid eye disease and "experiences frequent severe headaches due to her vision issues." Tr. 565. According to Mr. Penner, "[d]ue to [plaintiff's] poor vision which is not at this stage correctable and her related chronic severe headaches, she should in my professional opinion be considered medically disabled on a

---

[4] Plaintiff initially claims the ALJ evaluated Mr. Penner's opinion pursuant to the incorrect standard because SSR 06-03p was rescinded by the Commissioner, effective March 27, 2017. Pl.'s Opening Br. 15 (doc. 16). The rules for evaluating opinion evidence for claims filed before March 27, 2017, are dictated by 20 C.F.R. § 404.1526. A licensed Physician's Assistant was not considered an acceptable medical source prior to that time. 20 C.F.R. § 404.1502(a)(8). Plaintiff applied for benefits on August 18, 2016. Tr. 167; *see also* Pl.'s Opening Br. 2 (doc. 16). The ALJ therefore did not err by evaluating Mr. Penner's opinion pursuant to SSR 06-03p.

permanent basis." *Id.* The record does not contain any subsequent or updated opinion evidence from Mr. Penner.

The ALJ afforded Mr. Penner's October 2018 opinion "little weight" because he "did not assess functional capabilities or limitations, and the determination of whether the claimant is disabled is reserved for the commissioner." Tr. 609.[5] The ALJ also found that, as "set forth above," the RFC "accommodates [plaintiff's] vision limitations and headaches." *Id.*

Generally, an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir.1995); *see also Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999) (ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity"). And inconsistency with medical evidence constitutes a germane reason to reject lay testimony. *Bayliss v. Barnhart*, 427 F.3d 1211,1218 (9th Cir. 2005).

Although Mr. Penner describes plaintiff's headaches as "frequent" and "severe," he does not refer to any concrete functional limitations associated therewith. *Cf. Sharon J. v. Comm'r,* 2020 WL 247195, *1 (D. Or. Jan. 16, 2020) (doctor's opinion that the claimant had certain "problems" did not qualify as a concrete functional imitation). Nor do Mr. Penner's chart notes document functional limitations associated with plaintiff's headaches. Further, as addressed in Section I, the ALJ's finding that plaintiff's headaches were not as frequent or limiting as alleged

---

[5] Where a medical source states that a claimant is disabled, the statement is of limited import under the rules governing applications originally filed before March 27, 2017. 20 C.F.R. §§ 404.1527(d); *see also McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (opinions on ultimate issue of disability are not binding on ALJ). Indeed, these rules direct that statements on the ultimate issue of disability categorically are *not* medical opinions. 20 C.F.R. §§ 404.1527(e). This is because disability under the Social Security Act is not a medical determination, but rather a legal determination. *McLeod*, 640 F.3d at 885.

is supported by substantial evidence. Indeed, after Mr. Penner authored his October 2018 opinion, plaintiff underwent additional eye procedures that improved both her vision and headaches.

Therefore, the ALJ provided legally sufficient reasons, supported by substantial evidence, for rejecting the opinion of Mr. Penner.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 26th day of October, 2023.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge